# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EDGAR PERKINS (#M-15408), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 10 C 2598 |
| v. ) | |
| ) | Magistrate Judge Morton Denlow |
| SUPERINTENDENT DANIEL MORECI ) | |
| and LIEUTENANT DANIEL MARTINEZ, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Edgar Perkins ("Plaintiff" or "Perkins"), an inmate at the Western Illinois Correctional Center, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that he was subjected to unconstitutional conditions of confinement while he was a pre-trial detainee at the Cook County Jail. Plaintiff names as Defendants Superintendent Daniel Moreci ("Moreci") and Lieutenant Daniel Martinez ("Martinez"), and alleges that from November 21, 2009, to March 1, 2010, he was in a cell that had a broken window, resulting in extremely cold temperatures. This matter is now before the Court on Defendants' motion for summary judgment [Dkt. 46]. For the reasons stated below, Defendants' motion for summary judgment is granted.

## I. BACKGROUND FACTS

At the time of the alleged violations, Plaintiff was a pre-trial detainee at the Cook County Jail. Plaintiff alleges he was subjected to unconstitutional conditions of confinement in Division 9, tier 2B, cell 2301, at the Cook County Jail from November 21, 2009, to March

1, 2010. *See* Am. Compl. [Dkt. 28]. More specifically, Plaintiff alleges that the window in his cell was cracked and had small round holes in it (the size of the point of a Bic pen), resulting in extremely cold temperatures during the relevant time period, and that he was unable to obtain extra blankets or long underwear. *Id.*; *see also* DX B, Pl. Dep., at 28-30, 32.[1] Plaintiff alleges the cold air came through his cell window. Pl.'s Dep., at 33, 39. Plaintiff is suing Moreci and Martinez in their individual capacities.

Defendant Moreci was the Superintendent of Division 9 at all relevant time periods. Plaintiff states he spoke to Moreci two or three times about the heat issue. *See id.* at 18. Plaintiff believes he spoke to Lt. Martinez one time but does not remember when it was. *Id.* at 22-23. Martinez is named in Plaintiff's amended complaint because he is the supervisor who signed-off on Plaintiff's two requests regarding his complaint about the heat issue. *Id.* at 22-24. Plaintiff believes that Moreci and Martinez are liable to him because they were both supervisors assigned to Division 9. *Id.* at 24-25.

Plaintiff was assigned to a bunk in his cell. He had sheet covers and a blanket, he wore his Cook County Jail uniform and underwear during the time period at issue. *Id.* at 40-41. Plaintiff states he asked various non-party correctional personnel for extra blankets from November 2009, to March 2010, and that he never received an extra blanket. *Id.* at 41-42.

---

[1] DX__ refers to exhibits attached to Defendants' Rule 56.1 Statement and Material Facts in Support of Their Motion For Summary Judgment [Dkt. 48]; PX__ refers to exhibits attached to Plaintiff's Response [Dkts. 50-54]. Further citations to "Pl.'s Dep." refer to portions of Plaintiff's deposition which were attached to Defendants' Rule 56.1(A)(3) Statement as Exhibit B.

Plaintiff submitted multiple grievances regarding the temperature in the cell-house during the relevant time period. *See* PX C. Plaintiff concedes he has no documentation or evidence that Moreci ever saw or received any grievance request made by him concerning his complaint of no heat. *See* Pl.'s Dep., at 43. However, the response by Martinez to Plaintiff's grievance dated January 6, 2010, indicates that Moreci was aware of an issue with the heat and had brought it to the attention of the facility manager. *Id.* at 44; *see also* PX C.

The affidavit of the Jim D'Amico ("D'Amico"), the facility manager, indicates that Cook County Jail personnel contact the facility manager when there are problems with systems at the jail, including heating, air conditioning, electrical, and plumbing. *See* DX F, D'Amico Aff., at ¶ 4. Pursuant to policy, facilities management engineers conduct daily rounds at the Cook County Jail to monitor temperature levels. *Id.* at ¶ 6. For purposes of the facilities management engineer's inspections, the acceptable temperature range is between sixty-eight and seventy-seven degrees. *See* DX F, Attach. 2 (Cook County Department of Facilities Management Policy Governing Monitoring Temperature Range at CCDOC). If during an inspection, the engineer determines that the temperature is outside of the acceptable range, the engineer makes every effort to bring the temperature within the acceptable range. *Id.* If acceptable temperature cannot be achieved and maintained, the engineer contacts administration so that further action can be taken, including inmate relocation. *Id.*

D'Amico reviewed the work order summary for the relevant time period and determined that no work orders were generated regarding problems with the heating system

for Division 9, Tier 2B. *See* DX F, D'Amico Aff, at ¶ 7 and Attach. 1. If a complaint regarding the temperature were made, and the facilities management engineer determined that there was nothing wrong with the heating system, no work order would be generated or reflected on the Work Order Summary. *Id.* Plaintiff states that of the forty-eight detainees who were housed on his tier, he was the only one who wrote a complaint about insufficient heat. *See* Pl.'s Dep., at 50- 51.

Plaintiff states that as a result of being in his allegedly cold cell, he caught a cold and got sore feet from walking. *See* Am. Compl., at 5; Pl.'s Dep., at 73; and DX G. Plaintiff admits he never requested medical attention for his cold or sore feet/fingers. *See* Pl.'s Dep., at 73. Plaintiff's medical records for the time period at issue reveal that he never sought medical attention for a cold, cold related symptom, or sore feet. *See* DX E (affidavit of Dr. Avery Hart with Plaintiff's medical chart attached). Further, Plaintiff was seen and examined by Dr. David Carrington during the time period at issue and Plaintiff told Dr. Carrington that "he felt fine, his sleep was good." *Id*.

## II. LEGAL STANDARD

### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the Court must view all the evidence and draw all reasonable inferences in the

light most favorable to the non-moving party. *Weber v. Univs. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

However, Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010) (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008)).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.*, 503 F.3d 588, 594–595 (7th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)) (internal citations omitted). The inquiry is essentially "whether the evidence presents a sufficient disagreement to require

5

submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

**B. Local Rule 56.1 (N.D. Ill.)**

Defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with their motion for summary judgment, Defendants included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" Dkt. #48-8, as required by circuit precedent. That notice clearly explained the requirements of the Local Rules and warned Plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g.*, *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

> Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:
>
> > (3) a concise response to the movant's statement that shall contain
> >
> > (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
> >
> > (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and

law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings"). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have . . . repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Plaintiff failed to file a proper response to Defendants' statement of uncontested facts. He does not respond to each numbered paragraph, nor does he cite to evidence that effectively contests the facts asserted by Defendants. Instead of responding to the statements of fact, Plaintiff filed responses to the affidavits supporting Defendants' statements of fact, but not in a manner precluding judgment. Because Plaintiff is proceeding *pro se*, the Court will grant him some leeway and consider the factual assertions he makes in his summary judgment materials. However, the Court will entertain Plaintiff's factual statements only to the extent that he could properly testify about the matters asserted. Among other things, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. A motion for summary judgment "requires the responding party to come forward with the evidence that it has – it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad* 569 F.3d 757, 767 (7th Cir. 2009) (citations omitted). Plaintiff's conclusory assertions and non-responsive arguments must be disregarded where there is no evidence to support them.

In addition, the Court supplements Defendants' statement of facts with facts included in the record.[2] The Court has additionally supplemented Defendants' statement of facts with additional facts Plaintiff asserted during his deposition in order to consider additional facts that may be helpful to Plaintiff.

### III. DISCUSSION

**A. Plaintiff Failed to Establish an Unconstitutional Condition of Confinement.**

State pre-trial detainees like Plaintiff are protected by the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979); *Tesch v. Cnty. of Green Lake*, 157 F.3d 465, 472-73 (7th Cir. 1998). The Due Process Clause prohibits the state from punishing a pre-trial detainee and requires jail officials to "provide humane conditions of confinement" for detainees. *See Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008); *Henderson v. Sheahan*, 196 F.3d 839, 844-45 (7th Cir. 1999). The government's obligation includes providing adequate food, clothing, shelter, protection and medical care. *Id.* Minimal decency requires the prison to provide protection from the cold. *See Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006); *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997).

---

[2]The Court also notes that Defendants have included only excerpts from Plaintiff's deposition transcript, which is not a wise practice for multiple reasons. First, Plaintiff, proceeding in this case pro se and in forma pauperis, does not have the funds to purchase a copy of the transcript for himself, and therefore he does not have access to all of the evidence. Second, the Court does not have the entire transcript, which in some cases can lead the Court to believe that there may be a material question of fact.

To establish a conditions of confinement claim, Plaintiff must present evidence that (1) he suffered a sufficiently serious constitutional deprivation; and (2) Defendants acted with deliberate indifference to the conditions of his confinement. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). In short, if an "inmate successfully establishes that the conditions were sufficiently serious, [the Court] then examine[s] whether prison officials acted with 'deliberate indifference' to the conditions in question." *Townsend*, at 773.

With respect to the objective component, Plaintiff has alleged that the cell in his window was cracked and had holes in it the size of the end of a ballpoint pen. He alleges that he was cold, and although he asked, he was unable to get extra blankets or long underwear. He did, however, have sheets and a blanket in his cell, and wore his uniform and underwear. He was not confined to his cell 24 hours a day. He was able to access the day room and take daily showers. He filed multiple grievances regarding the temperature that contain responses from Martinez, indicating that Moreci had contacted Facilities Management about Plaintiff's complaints about the cold. He also admits that out of the forty-eight inmates on his tier, he was the only one who complained about the cold.

Defendants have provided evidence, in the form of an affidavit by D'Amico, the facility manager, describing the procedure followed at the Cook County Jail when there is an issue with the heating system. His affidavit and supporting documentation indicate that facility management engineers conduct daily rounds during all three shifts to monitor temperature levels in the jail. The temperature levels at the jail are kept between sixty-eight and seventy-seven degrees. If the temperature deviates from that range an attempt is made

by the engineer to bring the temperature within the acceptable range. If in-range temperatures cannot be achieved within an acceptable time-frame, the engineer notifies administration so the jail can arrange for relocation of inmates, pending resolution of the problem. D'Amico's affidavit indicates that he reviewed the work order summary for the time period between November 21, 2009, and March 1, 2010, and the record indicates that there were no work order requests for the relevant time period, thus indicating that the temperature in Plaintiff's area of the jail was between sixty-eight and seventy-seven degrees during the relevant time period.

Plaintiff attempts to contradict the affidavit and its supporting documentation by directing the Court's attention to the responses to his grievances regarding the insufficient heat in his cell. The responses, however, indicate only that facilities management had been contacted regarding Plaintiff's complaints about insufficient heat. The responses do not contradict D'Amico's statement that there were no work orders during the time period in question because when the engineer responds to a complaint about the heat, if nothing is found to be wrong with the system, then no work order is generated. Accordingly, Plaintiff's response does not create a question of fact regarding the level of heat in his cell house.

Plaintiff has submitted no evidence to refute Defendants' contention that his cell was kept between sixty-eight and seventy-seven degrees. At most, Plaintiff has established that he complained about the cold. The Seventh Circuit has held that, "[i]nmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obligated to provide constitutionally adequate confinement." *Harris v. Fleming*,

10

839 F.2d 1232, 1235-36 (7th Cir. 1988); *see also Webb v. Randle,* Case No. 10-470, 2011 U.S. Dist. LEXIS 15758 at *6 (S.D. Ill. February 16, 2011) (Murphy, J.). Plaintiff may have established that he notified Defendants that he was uncomfortable, but he has not established that he was subjected to extreme temperatures sufficient to implicate the constitution.

Plaintiff asserts that he was denied extra blankets when he requested them. Although a deprivation of clothing and bedding may rise to the level of a constitutional violation in cases where an inmate has been subjected to extreme cold, *Murphy v. Walker*, 51 F.3d 714, 720-21 (7th Cir. 1995)(allegation that the inmate was confined to a cold cell without clothes, bedding or heat in mid-November sufficient to proceed on Eighth Amendment claim), Plaintiff here was provided with clothes and he has not demonstrated that he was subjected to excessively cold temperatures. As Plaintiff has established no material question of fact regarding the objective component of the test for unconstitutional conditions of confinement the Court need make no determination as to Defendants' subjective state of mind. The Court finds, based on the uncontroverted evidence in the record, that no reasonable jury could find that Plaintiff was subjected to an objectively serious constitutional deprivation, and consequently Defendants are entitled to judgment.

Additionally, the Court notes that Plaintiff has not established any evidence of physical injury. An inmate generally cannot recover compensatory damages without physical injury. 42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) ("We believe

11

that . . . § 1997e(e) forecloses an action for nominal or punitive damages for an Eighth Amendment violation involving no physical injury"). *see also Zehner v. Trigg*, 133 F.3d 459, 462-63 (7th Cir. 1997) (upholding the PLRA's limitation on damages in the absence of a showing of physical injury). The Court held in *Calhoun* that nominal damages are not foreclosed absent a showing of physical injury because, "[they] are not compensation for loss or injury, but rather recognition of a violation of rights." *see Calhoun,* at 941.

Plaintiff alleges that due to the cold conditions in his cell, he caught a cold and had sore feet. Defendants have provided an affidavit of Dr. Avery Hart, the Chief Medical Officer of Cermak Health Services, which provides medical services to the Cook County Jail. Dr. Hart reviewed Plaintiff's medical records for the relevant time period and the chart indicates that Plaintiff sought no treatment for a cold, cold related symptoms, or sore feet during the period between November 21, 2009 and March 1, 2010. Defendants also provide evidence in support of the affidavit that Plaintiff reported to a Dr. Carrington on January 28, 2010, that he was having no problems sleeping.

Plaintiff alleges a cold and sore feet, but sought no treatment for his alleged conditions. In short, he has provided no evidence of physical injury. The record provides no evidence of an objectively serious constitutional deprivation. Even if Plaintiff had provided such evidence sufficient to establish the objective component of his conditions of confinement claim, based on the failure to provide evidence of a physical injury, the only remedy available to him at trial would have been nominal damages.

## IV. CONCLUSION

**For the reasons set forth in this opinion, Defendants' motion for summary judgment [#46] is granted and Plaintiff's motion in response [#55], to the extent it can be construed as a motion, is denied.**

**SO ORDERED THIS 18th DAY OF JULY, 2012**

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

| | |
|---|---|
| Edgar Perkins | Paul W. Groah |
| M#15408 | Assistant State's Attorney |
| Western Illinois Correctional Center | Civil Actions Bureau |
| 2500 Rt. 99 South | 500 Richard J. Daley Center |
| Mount Sterling, Illinois 62353 | Chicago, Illinois 60602 |
| **Plaintiff** | **Counsel for Defendants** |

14